UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 20-62184-CIV-CANNON/HUNT

RHYAN SALAME PERSAUD,

        Plaintiff,

vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.
_____/

## REPORT AND RECOMMENDATIONS

THIS CAUSE is before this Court on the Parties' Cross Motions for Summary Judgment. ECF Nos. 21, 22. The Honorable Aileen M. Cannon, United States District Judge, referred this Matter to the undersigned United States Magistrate Judge for a Report and Recommendation. ECF No. 2; *see also* 28 U.S.C.A. § 636(b); S.D. Fla. L.R., Mag. R. 1. Upon thorough review of the Motions and the Responses thereto, the entire case file, the applicable law, and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment, ECF No. 25, be denied and that Defendant's Motion for Summary Judgment, ECF No. 28, be granted.

## BACKGROUND

Rhyan Salame Persaud ("Plaintiff") filed an application for Title II disability insurance benefits on November 17, 2017, alleging disability beginning on March 29,

---

[1] Although Andrew Saul was the Commissioner of the Social Security Administration at the time this case was filed, Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

2017.  ECF No. 21 at 1.  The Social Security Administration ("SSA") denied her claim at the initial and reconsideration levels.  *Id.*  A hearing on Plaintiff's disability claim took place on October 28, 2019.  *Id.* An Administrative Law Judge ("ALJ") issued an unfavorable decision denying Plaintiff's claim on November 21, 2019.  *Id.*  The Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision.  *Id.*  Plaintiff now seeks judicial review of the ALJ's decision.

## Social Security Framework

To determine whether a claimant is disabled, the Social Security Regulations outline a five-step process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functioning capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 29, 2017.  ECF No. 18 at 30.  At step two, the ALJ found that Plaintiff had the following combination of severe impairments: bilateral knee derangement, right shoulder rotator cuff tear and impingement, cervical and lumbar spine degenerative disc disease, vertigo and post-traumatic stress disorder.  *Id.*  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404.  *Id.* at

24–25. After careful consideration of the entire record, at step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), except the claimant is limited to work that does not involve exposure to unprotected heights or dangerous machinery. The claimant is limited to low stress work, defined as work that does not require the ability to carry out complex tasks or instructions, that involves no more than occasional, superficial interaction with coworkers or the public, and that does not involve more than occasional changes in the work process or work setting.

*Id.* at 32-33.

After consulting with a vocational expert ("VE"), the ALJ then found that Plaintiff was capable of performing her past relevant work as a mailroom clerk. *Id.* at 43. As a result, the ALJ found that Plaintiff was not disabled. *Id.* at 44.

## **STANDARD OF REVIEW**

Judicial review of the ALJ's decision in a disability case is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d, 1219, 1221 (11th Cir. 2002) (citing 42 U.S.C. § 405(g)). Whether the ALJ applied the correct legal standards is a question of law, which this Court reviews *de novo*. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, "taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995). However, the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Even if the evidence preponderates against the ALJ's decision, the reviewing court must affirm if the decision applies the correct legal standard and is supported by substantial evidence. *See Crawford*, 363 F.3d at 1158–59.

## **ANALYSIS**

Plaintiff makes two arguments in support of her request to reverse the ALJ's decision and remand this case for further proceedings. First, Plaintiff argues that the ALJ's decision was contrary to and inconsistent with the medical opinions and evidence. Second, Plaintiff argues that the decision is constitutionally defective due to the structure of the Social Security Administration. The undersigned addresses each argument below.

> I.  Inconsistency of the decision with the evidence

In her first argument, Plaintiff contends that the ALJ erred in finding she retained the capacity to perform the lifting, standing and walking requirements of light work contrary to the opinions of examining and treating physicians. Plaintiff also contends that the ALJ's finding that Plaintiff does not have any upper extremity limitations is inconsistent with the medical opinion evidence from treating and examining sources.

As to the lifting, standing and walking requirements, Plaintiff specifically argues that the opinions of Dr. Ronit Gilad, a treating neurosurgeon, and Dr. Steven Samuels, a state agency consultant, run counter to the finding that Plaintiff required no reaching or upper extremity limitations. Plaintiff points to the fact that in September 2017, Dr. Gilad opined that Plaintiff's limitations included no bending or twisting, no lifting above the head,

4

no lifting over ten pounds, and no prolonged sitting or standing.  ECF No. 18 at 357.  Later that year, Plaintiff reported progressive low back pain, which radiated to her leg, and an examination led to a diagnosis of right lumbar radiculopathy versus sacroiliitis.  *Id.* at 437.

Dr. Samuels, who examined Plaintiff in December 2017, opined that Plaintiff would have marked limitations in overhead reaching and moderate to marked limitations in climbing stairs, heavy lifting, heavy carrying, bending, squatting, and kneeling.  *Id.* at 456-60.  Examinations in January 2018 led to diagnoses of impingement syndrome of right shoulder, bursitis of right shoulder, and chondromalacia of bilateral patella, and Plaintiff continued to report pain and numbness in her right arm, as well as low back pain.

As of December 2018, Dr. Gilad opined that Plaintiff could never lift or carry over ten pounds and could only sit for one hour at a time, that she could stand for fifteen minutes at one time, and walk for 30 minutes at one time without interruption.  Dr. Gilad also determined that Plaintiff could sit for no more than eight hours total, stand for two hours total, and walk for two hours total in an eight-hour shift.  Plaintiff could only occasionally reach overhead and in all directions, and could only occasionally handle, finger, feel, and push/pull with her left and right hands.  She could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl and could never be exposed to unprotected heights or vibrations.  *Id*. at 507-512.

Plaintiff argues that this evidence demonstrates that she could not perform the lifting, standing, walking and upper extremity functional requirements of light work, contrary to the ALJ's ultimate determination.  Plaintiff contends that the ALJ erred by discounting the opinions of Drs. Gilad and Samuels as outlined above.  Plaintiff argues that the ALJ's decision was based on a false premise that Plaintiff was improving, when

in fact Plaintiff only experienced a brief respite from an increasingly deteriorating situation. To reach the ALJ's determination required impermissible cherry picking of evidence and activities to achieve a particular outcome, according to Plaintiff.  The record as a whole demonstrates that the ALJ's position was not supported by substantial evidence, Plaintiff contends.

Defendant responds that Plaintiff has failed to establish with objective evidence that overhead reaching limitations were warranted.  Although Plaintiff did, indeed, have a shoulder impairment in 2016, Defendant points out that she completed treatment in 2018 with full strength and an almost full range of motion, albeit with pain.  However, even were the reaching limitations warranted, Defendant argues, the error was harmless as the VE relied on by the ALJ testified that Plaintiff's previous work as a mail clerk was available even with such limitations.

Defendant argues that Dr. Gilad's opinion was properly found less persuasive as longitudinal physical exam findings demonstrate that Plaintiff had full strength and intact sensations in both legs, as well as normal gait.  Likewise, Defendant argues, Dr. Samuels' postural and reaching limitations were inconsistent with other objective evidence demonstrating Plaintiff's largely normal strength, sensation, and abilities.   Defendant further points out that the ALJ relied heavily on medical findings that post-date the opinions of Dr. Samuel and Dr. Gilad.

Defendant contends that the ALJ did not cherry pick, but instead considered the record as a whole and came to a conclusion supported by substantial evidence.  Further, according to Defendant, the ALJ was correct in his evaluation of Plaintiff's daily activities. These daily activities required substantial use of both lower and upper extremities, and

contradict the limitations alleged by Plaintiff, Defendant argues. Finally, Defendant argues that the ALJ is entitled to evaluate Plaintiff's subjective complaints in the light of the objective evidence, and that said evaluation was properly executed in this case.

Plaintiff responds that there is no evidence during the relevant period, March 2017 through November 2019, that shows she could actually perform the lifting, standing, walking and upper extremity functional requirements of light work. She points out that in May 2018, Dr. Gilad noted that Plaintiff's symptoms were worsening, with Plaintiff reporting new neck and arm pain in September 2018, and that this report is consistent with other medical evidence. Likewise, Plaintiff argues, her daily activities are not so extensive as to warrant the functional capacity recognized by the ALJ. Relying on a few isolated trips and self-described daily activities to discount medical testimony is inappropriate, Plaintiff argues. Further, Plaintiff argues that the ALJ's reliance on outdated opinions to discount a treating neurosurgeon and state examiner is unreasonable.

New regulations governing claims such as Plaintiff's that were filed after March 27, 2017, alter the way ALJs are required to consider medical source statements. In pertinent part, treating source statements are no longer entitled to any particular deference. Instead, the ALJ evaluates the persuasiveness of such statements according to the following five factors:

(1) Supportability
(2) Consistency
(3) Relationship with the claimant (which includes)
    (i)   Length of the treatment relationship
    (ii)  Frequency of examinations
    (iii) Purpose of the treatment relationship
    (iv) Extent of the treatment relationship
    (v)  Examining relationship

      (4) Specialization
      (5) Other factors

20 C.F.R. § 404.1520c(c).

Of primary importance in this analysis are the supportability and consistency factors. 20 C.F.R. § 416.920c(b)(2). As such, how the ALJ considers these factors must be explained, while explaining the remaining factors is optional. *Id.*

Beginning with how the ALJ regarded Plaintiff's daily activities, an examination of the ALJ's decision demonstrates that he did not rely solely on the daily activities to contradict Plaintiff's subjective statements regarding her abilities. Instead, the daily activities were used as supporting evidence, following multiple explicit cites to the record demonstrating record evidence contradicting Plaintiff's testimony. ECF No. 18 at 34, 43.

The ALJ, extensively citing evidence, noted the various changes in the status of Plaintiff's shoulder condition throughout the period in question, reflecting that Plaintiff did indeed have some continuing pain, but that functionality remained high through the period and that Plaintiff engaged in physical therapy in 2019. *Id.* at 35. The ALJ did the same for Plaintiff's knee, spine, and mental conditions.

This examination yielded some pertinent observations, such as the fact that in April 2018, Plaintiff reported that she exercised 5-6 days per week for 30 minutes at a time. ECF No. 18 at 27. Although Plaintiff did develop further pain by October 2018, muscle strength remained relatively strong, and testing remained normal. Her conditions remained manageable with physical therapy and proper pain control. *Id.* at 32.

As for the opinion evidence, the ALJ correctly stated that

> for claims filed on or after March 27, 2017, the Social Security Administration will not defer to or give any specific evidentiary weight to prior administrative medical findings or medical opinions, including those from

>the claimant's medical sources. Rather, the undersigned will evaluate the persuasiveness of such evidence in consideration of factors including supportability of the opinion, consistency with other evidence, the relationship of the treating source with the claimant, and the medical source's specialization, if any.

*Id.* at 38.

The ALJ then systematically examined the opinions of multiple medical sources, including both Dr. Samuels and Dr. Gilad.  As to Dr. Samuels, after going through the doctor's examination notes, the ALJ found him only partially persuasive due to the cursory nature of his examination and its inconsistency with the record.  The ALJ then cited to Dr. Hasan Chughtai's assessments, which followed a surgical procedure and were conducted approximately 18 months prior to Dr. Samuels' exam, that Plaintiff could return to work with no limitations.  The ALJ also cited to evidence from a month after Dr. Samuels' assessment showing that although there was some stiffness and pain in the shoulder, it was not debilitating.  The ALJ does then cite to Plaintiff's daily activities, but this is only as further evidence demonstrating why the ALJ found Dr. Samuels' conclusions less persuasive.  *Id.* at 40.

Dr. Gilad's opinion was subjected to a similar process.  The ALJ, having already extensively cited to medical findings supporting a light residual functional capacity with additional postural limitations, found Dr. Gilad's opinions regarding the degree of limitation unpersuasive.  As with Dr. Samuels, the ALJ once again went through specific evidence from approximately 12 months earlier that supported the ALJ's determination.  *Id.* at 41.

Plaintiff asks this Court to view each assessment in isolation.  However, the ALJ's decision was not made in isolation.  Instead, the ALJ went through each opinion, explaining whether he found it supported by or consistent with the record, as is required.  Each individual assessment, however, also built off those before it.  Taken altogether the

record demonstrates, as the ALJ pointed out, a general improvement in Plaintiff's condition, with occasional setbacks that were largely manageable. Far from cherry picking, the ALJ pointed to extensive record evidence to support his conclusions. Indeed, one would have to ignore significant amounts of contradictory evidence, from the entire time period in question and cited extensively throughout the decision, in order to give credence to Plaintiff's proposed reading of the evidence. Such is not the place of this reviewing Court.

Regarding Plaintiff's alleged disabilities as related to her upper extremity limitations, in his hypotheticals to the VE, the ALJ questioned the VE as to a hypothetical individual limited to only occasional reaching with only the right arm, and who required no more than frequent use of the arms for lifting, carrying, pushing, or pulling. ECF No. 18 at 82. The VE opined that Plaintiff's prior work as a mail clerk would remain available to such an individual even with such limitations. *Id.* Upon questioning from claimant's attorney, the VE did state that the mail clerk position would not be available if a claimant were limited to only occasional reaching in all directions, ECF No. 18 at 85-86. But this is not a limitation the ALJ found supported by the evidence. The undersigned sees no reason to disturb that finding. Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied on this point.

II. <u>Separation of Powers</u>

As to her second point, Plaintiff, relying on *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), argues that her case should be remanded for a de novo hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously decided this case when the ALJ had no lawful authority to do so.

The argument goes that *Seila Law*, which held that it is unconstitutional for an executive agency—in that case the Consumer Financial Protection Bureau ("CFPB")—to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause, also applies to the SSA, which has the same structure as the CFPB.  As such, the SSA allegedly deprived Plaintiff of a valid administrative adjudicatory process, because the authority from which the ALJ and the Appeals Council derive their power to adjudicate stems from a constitutionally defective position.

However, to obtain retrospective relief under *Seila Law*, the Supreme Court held that a plaintiff must show that "an unconstitutional provision . . . inflict[ed] compensable harm." *Collins v. Yellin*, 141 S. Ct. 1761 at 1788–89 (2021), 1788 n.24 (stating that *Seila's* holding does not mean that "actions taken by such an officer are void *ab initio* and must be undone").  Plaintiff's argument is essentially that the ALJ's decision is void due to the unconstitutional nature of the agency's removal provision.  However, Plaintiff has not identified how the removal provision at issue caused her compensable harm.  Plaintiff's alleged injuries are nothing more than conclusory allegations.  Such claims have been flatly rejected in this District.  *See e.g., Crowley v. Kijakazi*, No. 20-62287-CIV-COHN/STRAUSS, 2022 WL 2805509, at *9 n.7 (S.D. Fla. June 30, 2022) (collecting cases that have rejected the same constitutional claims), *report and recommendation adopted*, No. 20-62287-CIV-COHN/STRAUSS, 2022 WL 2802664 (S.D. Fla. July 18, 2022).

Plaintiff here has not set forth any facts that show any connection between the removal provision and any possible compensable harm to her.  The ALJ's decision here

was based upon the factual record and the application of established law, which generally cannot be changed by the Commissioner. Plaintiff, like the other plaintiffs in the cited cases, has neither shown a nexus between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her harm. Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied on the constitutional claim.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned hereby RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, and that Defendant's Motion for Summary Judgment be GRANTED.

Within seven (7) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 19th day of September 2022.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
　The Honorable Aileen M. Cannon
　All Counsel of Record